24-2206-cv
*U.S. Sec. & Exch. Comm'n v. Amah*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of February, two thousand twenty-six.

PRESENT:
> MICHAEL H. PARK,
> ALISON J. NATHAN,
> SARAH A. L. MERRIAM,
> > *Circuit Judges*.

---

UNITED STATES SECURITIES & EXCHANGE COMMISSION,
> *Plaintiff-Appellee*,

v.                                                            24-2206-cv

EVARIST C. AMAH,
> *Defendant-Appellant*.

---

FOR PLAINTIFF-APPELLEE:       JORDAN A. KENNEDY, Appellate Counsel (Jeffrey B. Finnell, Acting General Counsel, Dominick V. Freda, Assistant General Counsel, Paul G. Álvarez, Senior Appellate Counsel, *on the brief*), Securities and Exchange Commission, Washington, DC.

FOR DEFENDANT-APPELLANT:       EVARIST C. AMAH, pro se, Houston, TX.

Appeal from two judgments of the United States District Court for the Southern District of New York (Karas, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the June 26 and July 2, 2024 judgments of the district court are **AFFIRMED** in part and **VACATED** in part, and the case is **REMANDED** for further proceedings consistent with this order.

Evarist C. Amah, proceeding *pro se*, appeals from the district court's judgments concerning liability and remedies for violations of the Securities Exchange Act and its implementing regulations, the Securities Act, and the Investment Advisers Act. The SEC sued Amah in 2021, alleging that he made materially false and misleading statements to members of his religion in order to solicit investments. The district court granted summary judgment to the SEC as to Amah's liability under all three laws. Then, after additional briefing, the court enjoined him from again violating the three laws, ordered disgorgement of $10,000 related to two specific transactions, and imposed a civil penalty of $669,667. Amah argues that the district court erred in granting summary judgment and abused its discretion in imposing the remedies. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

"We review de novo a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor." *Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 752 (2d Cir. 2023) (quotation marks omitted). "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 620 (2d Cir. 2016) (cleaned up). "[O]nce the district court has found federal securities law

violations, it has broad equitable power to fashion appropriate remedies, and its choice of remedies is reviewable for abuse of discretion." *SEC v. Fowler*, 6 F.4th 255, 265 (2d Cir. 2021) (cleaned up).

### I. Securities Exchange Act and Securities Act

The district court properly concluded that Amah was liable under Securities Exchange Act § 10(b) and Rule 10b-5, and Securities Act § 17(a). Because Amah does not contest the reasonable reliance or injury elements under those provisions, the only questions are whether he made materially false or misleading statements or omissions, and whether he did so with scienter. *See SEC v. DiBella*, 587 F.3d 553, 563 (2d Cir. 2009) (Securities Exchange Act and Rule 10b-5); *SEC v. Frohling*, 851 F.3d 132, 136 (2d Cir. 2016) (Securities Act). The district court correctly answered both questions in the affirmative.

### a. Materially False and Misleading Statements

The district court correctly determined that Amah made materially false and misleading statements with respect to the past and projected performance of the Mountain Support Initiative – Investment Trading ("MOSI-IT") program. A statement is materially misleading if "the [defendant's] representations, taken together and in context, would have misled a reasonable investor." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 250 (2d Cir. 2016) (emphasis omitted). Projections are "opinion statements," *In Re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 46 (2d Cir. 2025), but are nonetheless "actionable if the speaker omits information whose omission makes the statement misleading to a reasonable investor," *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016).

Amah created or distributed at least two investor communications falsely representing MOSI-IT's performance. First, in June 2018 he emailed MOSI-IT investors a performance report

stating that, as of May 31, 2018, the "[v]alue of investments" in MOSI-IT was $439,751 and its year-to-date return was 5.96%. Supplemental App'x at 290-91. But a month earlier, he had approved a quarterly account statement showing that, as of March 31, 2018, the account holding MOSI-IT investors' funds had a value of just $10,369.46 and had sustained a year-to-date *loss* of 78%. When questioned by the SEC, Amah admitted that the values in the June 2018 performance report were inaccurate and that "MOSI-IT had lost nearly all of the investor capital of $415,000 at this point." *Id.* at 786, 793-94.

Amah argues that he created the June 2018 report in response to an investor's request for a "hypothetical scenario with a projected high-risk but high-yield strategy." Appellant's Br. at 7, 10, 15. But that bare assertion does not create a genuine dispute as to whether the report was materially false or misleading. The report did not explain that it reflected hypothetical rather than real returns, and instead stated that it documented the "investment performance for the month ended May 31, 2018." Supplemental App'x at 291. Amah's email to MOSI-IT investors attaching the report likewise described it as "the MOSI-IT performance report from inception to May 21 [sic], 2018," not as a hypothetical scenario. *Id.* at 290.

A second materially false statement came in July 2019, when a MOSI-IT investor emailed the "MOSI-IT Team" a "performance report of the MOSI-IT fund as received from Mr. Amah." Supplemental App'x at 320.[1] The report identified a "[v]alue of [i]nvestments, at June 30, 2019" of $325,794.15 and a "[r]eturn since inception" of negative 36.74%. *Id.* at 321. But the brokerage statement showed an investment value of only $1,742.51 as of June 30, 2019,[2] meaning the actual return since inception was negative 99.66%. Amah later admitted that the numbers in

---

[1] During his SEC deposition, Amah confirmed that he prepared the report.

[2] Lumine Fund's brokerage account and bank account together had less than $2,000 in assets as of June 30, 2019.

the July 2019 report were inaccurate.

Amah also made materially misleading projections about MOSI-IT's performance. Even if Amah's initial projected annual returns of 100% or more were merely optimistic, his choice to later double down despite the fund's near-total losses crossed the line to become unlawful. For example, in an April 2017 email, Amah stated that his "current projections indicate" a "3% to 3.5% annual return," *id.* at 224, just after the fund had posted a year-to-date return of *negative* 97.28% as of March 31, 2017. When one of his investors asked to see "the actual return" in lieu of a projection, Amah misleadingly responded that he could not provide that information "given the way the investment has been structured[.]" *Id.* Amah then solicited additional investments on the basis of his new projections, promising to "guarantee a 10% minimum annual return and security of capital" if he were able to raise an additional $1 million. *Id.* at 222. Taken together, Amah's unachievable projections, refusal under false pretenses to provide investors with current data, and guarantees of risk-free returns render his communications misleading.

Amah contends that his projections, even if overly optimistic, were accompanied by appropriate disclosures. He relies on cases applying the "bespeaks-caution doctrine," which provides that a "forward-looking statement accompanied by sufficient cautionary language is not actionable because no reasonable investor could have found the statement materially misleading." *Iowa Pub. Emps.' Ret. Sys. v. MF 13 Glob., Ltd.*, 620 F.3d 137, 141 (2d Cir. 2010). But that doctrine does not apply because a "generic warning of a risk will not suffice when undisclosed facts on the ground would substantially affect a reasonable investor's calculations of probability." *Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 251 (2d Cir. 2014). Here, Amah's investment management agreement warned in general terms that "the value of investments made for the Account may go down as well as up and is not guaranteed" and that an investor "could

incur substantial, or even total, losses on an investment[.]" Supplemental App'x at 542, 544. Whatever warnings Amah gave at the outset, his "failure to disclose that the risk" of substantial-or-even-total loss had in fact "transpired" would mislead a reasonable investor. *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004). The district court thus did not err in concluding that Amah made materially false and misleading statements to investors.

### b. Scienter

The district court also properly concluded that Amah acted with scienter. The "scienter needed for proof of a claim" under the securities laws "may be established through a showing of reckless disregard for the truth." *SEC v. McNulty*, 137 F.3d 732, 741 (2d Cir. 1998). Scienter may be demonstrated where the defendant "knew facts or had access to information suggesting that [his] public statements were not accurate." *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000). The district court found that the SEC came forward with "strong circumstantial evidence" that Amah, "at the very least, acted with reckless disregard for the truth." App'x at 45-46. It based this conclusion on (1) Amah's testimony that he was aware of MOSI-IT's actual performance and (2) the fact that he approved statements showing substantial trading losses at the same time he was projecting positive returns.

Amah does not dispute that he knew MOSI-IT had lost nearly all of the investors' money when he (1) distributed the June 2018 report claiming a year-to-date return of 5.96%, (2) prepared the July 2019 report identifying a return since inception of negative 36.74%, and (3) projected positive single-digit returns in April 2017 and on various other occasions. Amah claims that he admitted to a colleague that the July 2019 performance statement included mistaken calculations. But even so, Amah kept this fact from other investors. Responding to a question from one investor about the July 2019 report, Amah stated that the loss reflected was "part of the ebbs and

6

flows of the market." Supplemental App'x at 334. Nor did his August 2019 letter to investors indicate that the July 2019 performance figures were inaccurate. And, when investors directly asked Amah about how the fund was doing, he made misleading excuses and refused to provide the information. Rather than suggesting good faith, these actions indicate that Amah "knew or, more importantly, should have known that [he] w[as] misrepresenting material facts" relating to MOSI-IT's performance. *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (quotation marks omitted).

## II. Investment Advisers Act

"Facts supporting a Securities Act Section 17(a) or an Exchange Act Section 10(b) violation by an investment adviser will also support a showing of a Section 206 violation under the Advisers Act." *Dembski v. SEC*, 726 F. App'x 841, 844 (2d Cir. 2018) (summary order). However, the Advisers Act also requires that the defendant be an "investment adviser," meaning "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities." *DiBella*, 587 F.3d at 567 n.10 (quoting 15 U.S.C. § 80b–2(a)(11)). The district court held that the SEC had not established that Amah received compensation from his MOSI-IT clients nor that he "had an expectation of compensation from his MOSI-IT clients." App'x at 53. It also acknowledged that "the record is unclear as to whether [Amah] ever actually received fees for his work advising non-MOSI-IT . . . clients." *Id.* at 55. However, the district court agreed with the SEC that Amah expected to receive compensation from his non-MOSI-IT clients, that an expectation of compensation is sufficient, and that "once a person meets [the] definition [of investment adviser] (by receiving

7

compensation from any client to which it provides advice), the person is an adviser and the Advisers Act applies to the relationship between the adviser and any of its clients (whether or not the adviser receives compensation from them)." App'x at 55-56 (quoting 76 Fed. Reg. 39646, 39669 (July 6, 2011)). Amah contends that the SEC's interpretation of "investment adviser" is unsupported by the statute's language and contrary to the Act's purpose. The SEC again relies entirely on its own rule for the proposition that past receipt of compensation can render one an "investment advisor" even if one is not receiving compensation at the time of the alleged violation of the Act.

Shortly before the district court entered final judgment, the Supreme Court held in *Loper Bright Enterprises v. Raimondo* that "courts must exercise independent judgment in determining the meaning of statutory provisions." 603 U.S. 369, 394 (2024). We "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 413. Both the SEC and the district court treated the SEC's prior interpretation of the Advisers Act as authoritative, and offered no substantive defense of that interpretation's correctness.[3] The parties do not identify, and we are not aware of, any Second Circuit or Supreme Court precedent interpreting the relevant statutory language on which we might rely in lieu of the SEC's interpretation. This case therefore presents a novel and important issue of statutory construction.

Of course, our independent examination of this issue might lead us to reach the same statutory construction as that reached by the SEC. But "[a]lthough we are empowered to affirm a district court's decision on a theory not considered below, it is our distinctly preferred practice

---

[3] Because the district court did not state explicitly that it was deferring to the SEC's interpretation, we do not believe that Amah forfeited his ability to object to any implicit deference simply because he failed to cite *Loper Bright*. To the contrary, Amah has raised substantive challenges to the SEC's interpretation, and the SEC's only response is to invoke a prior interpretation to which we may no longer defer. We deem Amah's argument sufficient in light of his *pro se* status. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." (quotation marks omitted)).

to remand such issues for consideration by the district court in the first instance." *Schonfeld v. Hilliard*, 218 F.3d 164, 184 (2d Cir. 2000). "This is particularly appropriate when, as here, such theories have been briefed and argued only cursorily in this Court." *Id.* We therefore vacate the district court's judgment as to liability under the Advisers Act and remand for proceedings consistent with this summary order.

We note that although Amah has no constitutional right to counsel in this civil case, he may request the appointment of counsel, which the district court may appoint under 28 U.S.C. § 1915(e)(1). *See Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). While "[b]road discretion lies with the district judge in deciding whether to appoint counsel," "the complexity of the legal issues" in this case in our view weigh in favor of such an appointment. *Id.* at 60 (quotation marks omitted).

### III. Remedies

Having concluded that Amah violated securities laws, the district court acted within its discretion in ordering injunctive relief, disgorgement, and civil penalties. However, because portions of the district court's injunction and civil penalties were based on Amah's violation of the Advisers Act, we vacate those portions of the remedies and remand for further consideration in light of the issue discussed above.

#### a. Injunctive Relief

The district court properly imposed a permanent injunction on Amah with respect to the Securities Exchange Act and Securities Act. To obtain injunctive relief for violations of the securities laws, the "SEC must demonstrate that there is a substantial likelihood of future violations of illegal securities conduct." *SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998). The court determines whether a "substantial likelihood" is present by considering "the fact that the defendant

has been found liable for illegal conduct; the degree of scienter involved; whether the infraction is an isolated occurrence; whether defendant continues to maintain that his past conduct was blameless; and whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated." *Id.* (quotation marks omitted).

The district court issued the injunction after considering these factors. Noting that Amah was liable for multiple securities violations, it concluded that he had acted with reckless disregard for the truth over a period of at least three years and continued to deny his responsibility. It also concluded that, but for an injunction, nothing would prevent Amah from engaging in similar fraudulent conduct in the future.

Amah contends that the district court should have considered the consequences to his professional and personal life in granting the injunction. He contends that he preserved this argument because he stated in his sur-reply—which he filed without requesting leave from the district court—that there was no need to enjoin him because he was not a threat to anyone. But Amah did not argue before the district court that it should have considered these collateral consequences in deciding whether to issue the injunction. "It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Green v. Dep't. of Educ. of City of N.Y.*, 16 F.4th 1070, 1078 (2d Cir. 2021) (quotation marks omitted). Amah's argument about collateral consequences was available to him in the district court, and he offers no reason for failing to raise it there. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008).

However, the district court enjoined Amah from future violations of the Advisers Act based on the assumption that he had been found liable for violating that Act. That assumption is no longer true in light of this order, and we accordingly vacate that portion of the district court's

injunction pending further consideration of the Advisers Act issue discussed above.

### b. Disgorgement

The district court did not abuse its discretion in ordering disgorgement of $10,000 plus prejudgment interest, nor was the disgorgement remedy based on the Advisers Act violation. The SEC uses disgorgement "to prevent wrongdoers from unjustly enriching themselves through violations." *SEC v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006). A "disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under" the securities laws. *Liu v. SEC*, 591 U.S. 71, 75 (2020); *see also SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1478 (2d Cir. 1996). "Accordingly, courts must deduct legitimate expenses before ordering disgorgement[.]" *Liu*, 591 U.S. at 91-92. "Once the SEC has met the burden of establishing a reasonable approximation of the profits causally related to the fraud, the burden shifts to the defendant to show that his gains were unaffected by his offenses." *SEC v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013) (quotation marks omitted).

The district court correctly concluded that the undisputed evidence established that Amah retained $10,000 in funds from his MOSI-IT clients. In support of its motion for final judgment and remedies, the SEC submitted a declaration and documents reflecting transfers of $7,000 from an investor into Amah's personal brokerage account that was never deployed as an investment. The records also demonstrate that Amah held onto $3,000 of a $150,000 investment, for a total of $10,000 net profit.

Amah argues that he accounted for all funds from his clients and did not personally benefit from the $10,000. But he does not argue, let alone demonstrate, that either the records submitted by the SEC or the declaration analyzing them were inaccurate. Nor does he come forward with documentation demonstrating that the $10,000 was either deployed as an investment or used for

11

legitimate business expenses or that he did not personally gain from the money. In short, the SEC carried its burden to "establish[] a reasonable approximation of the profits causally related to the fraud," and Amah failed "to show that his gains were unaffected by his offenses." *Razmilovic*, 738 F.3d at 31 (quotation marks omitted).

Amah also argues that he spent more than $30,000 of his own money to pay fees associated with MOSI-IT. But in support of this claim, Amah submitted to the district court a two-page list of expenses without verification or supporting documentation. On appeal, Amah comes forward with no additional corroboration of the expense list. The district court properly found no reason to reduce the SEC's requested disgorgement amount.

### c. Civil Penalties

Finally, while the district court properly assessed civil penalties against Amah, we vacate and remand the part of the penalty based on the Advisers Act violation. The Securities Act, Securities Exchange Act, and Advisers Act define three tiers of penalties for violations of those statutes, with the most severe third tier appropriate for statutory violations that "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii), 80b-9(e)(2)(C). "[S]everal factors determine an appropriate civil penalty award: (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *Fowler*, 6 F.4th at 266 (quotation marks omitted). Here, the district court determined that third-tier penalties were appropriate because

12

Amah, with scienter, engaged in recurrent violations of the securities laws and refused to accept responsibility, resulting in at least $600,000 in losses.

However, the district court imposed "one $223,229 third-tier civil penalty for each of the three federal securities acts [Amah] violated, because it appropriately punishes Defendant for his egregious misconduct and serves to deter future violations of the securities laws." App'x at 67-68. The portion of the penalty based on the Advisers Act violation must therefore be vacated and remanded for further consideration in light of the Advisers Act issue identified above.

Separately, Amah argues that the district court should have considered his inability to pay in imposing the civil penalties. But the district court did consider his financial position, concluding that neither Amah nor the record showed "that the civil penalty should be adjusted for [his] financial condition[.]" App'x at 70. Although Amah claimed he was "on the brink of bankruptcy" and offered to "supplement the record with such evidence" supporting his claim, ECF No. 70, at 3, he never introduced evidence of financial hardship. Nor would financial hardship alone have outweighed the other factors, which favored the highest penalty. The district court thus did not abuse its discretion in concluding that Amah's assertions did not demonstrate a financial condition warranting lower penalties.

Amah's argument that the third-tier penalties were "grossly disproportional" to the offenses, and thus prohibited by the Eighth Amendment's Excessive Fines Clause, likewise fails. Appellant's Br. at 25-26. In determining whether a penalty violates the Eighth Amendment, we have considered "(1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct." *United States v. George*, 779 F.3d

113, 122 (2d Cir. 2015); *Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582, 589 (2d Cir. 2024) (applying these factors to civil penalties).

The district court's analysis of the penalties conformed to these principles. As mentioned above, the court concluded that Amah engaged in continuous, reckless violations of the securities laws causing his victims at least $600,000 in losses. His conduct fell squarely within what is prohibited by the securities laws. And because the district court could have instead "calculate[d] the maximum penalty by counting . . . each customer victimized by the [scheme]," *Fowler*, 6 F.4th at 264-65 (quotation marks omitted), an alternative calculation could have permissibly assessed him as many as nine third-tier penalties. The civil penalties thus did not violate the Eighth Amendment's Excessive Fines Clause.

\*     \*     \*

We have considered Amah's remaining arguments and find them to be without merit. We accordingly **AFFIRM** the judgments of the district court as to liability and remedies under the Securities Exchange Act and Securities Act, and as to disgorgement. We **VACATE** the judgment of the district court as to liability and remedies under the Advisers Act, and **REMAND** for proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

14